UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case Number: 17-22679-CIV-MARTINEZ-OTAZO-REYES

SHOW ME HOSPITALITY, LLC,
    Plaintiff,

vs.

TIM HORTONS USA INC.,
    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

THIS MATTER is before the Court on Defendant Tim Hortons USA Inc.'s ("THUSA" or "Defendant") Motion to Dismiss and Motion to Strike [ECF No. 15]. The Court has reviewed the motion, Plaintiff's response, and Defendant's reply and is otherwise fully advised in the premises. The Court will first address Defendant's Motion to Dismiss.

### I.    Background

This action arises out of an Area Development Agreement ("ADA") entered into by the parties, which operates to allow Plaintiff to acquire and open TIM HORTONS locations in the St. Louis Designated Marketing Area ("DMA"), and Franchise Agreements relating to said locations. Plaintiff brings the following claims against Defendant: Anticipatory Breach of Contract (THUSA's Anticipatory Breach of the ADA) (Count I); Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing (THUSA's Breach of the ADA) (Count II); Breach of Contract and Implied Covenant of Good Faith and Fair Dealing (THUSA's Breach of the Franchise Agreements) (Count III); and Tortious Interference with Business Expectancy (THUSA's Tortious Interference with the Company's Partnership) (Count IV). Defendant now moves to dismiss Plaintiff's Complaint, in its entirety, for failure to state a claim.

## II. Legal Standard

Federal Rule of Civil Procedure 8(a) provides that a plaintiff's pleading "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has instructed that a plaintiff must submit "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the factual allegations are plausible, the court cannot decide disputed fact issues – that is, the court must assume that all plausible facts contained in the Complaint are true. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

## III. Analysis

### a. Count One – THUSA'S Anticipatory Breach of the ADA[1]

Defendant brings two over-arching arguments as to why Count One should be dismissed. Defendant first contends that the factual allegations reveal that Plaintiff's claim for anticipatory breach is based on Defendant's attempt to renegotiate the ADA and, under Ohio law, attempting to renegotiate a contract does not constitute an anticipatory repudiation. Second, Defendant argues that even if the facts alleged do make out a claim for anticipatory repudiation, Plaintiff has not exercised its allowed options under Ohio law of either (1) terminating the contract and suing the breaching party immediately, or (2) continuing the contract and suing the breaching

---

[1] The ADA is governed by Ohio law. *See* [ECF No. 1-1 at §19.14 (ADA)].

party for damages after the time for performance has passed.[2]

With respect to the former, Plaintiff responds that Defendant is incorrect in its deduction that the only conclusion the court can reach from the facts asserted in the Complaint is that THUSA attempted to "modify" the ADA. This Court agrees with Plaintiff. At this stage in the proceedings, this Court must construe the Complaint in the light most favorable to Plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997). The Court must also "draw all reasonable inferences therefrom in favor" of Plaintiff. *See Williams v. Alabama State University,* 102 F.3d 1179, 1182 (11th Cir. 1998). Applying this standard, Plaintiff has alleged an "unequivocal repudiation" by Defendant by "word or deed," supported by plausible factual allegations. *See Sunesis Trucking Co., Inc. v. Thistledown Racetrack, LLC,* 22 N.E. 3d 190 (Ohio Ct. App. 2014). Resolving all reasonable inferences in favor of Plaintiff, this Court concludes that Plaintiff has pled more than just "renegotiation" of the ADA as a basis of its anticipatory repudiation claim.

Turning to the latter portion of Defendant's argument, the Court again agrees with Plaintiff that when accepting the allegations as true and viewing them in the light most favorable to Plaintiff, Plaintiff has alleged enough plausible facts to show that it exercised its allowed options under Ohio law in constructively terminating the ADA while not accepting any benefits after the repudiation and suing Defendant.[3] Plaintiff has sufficiently pled a claim for anticipatory

---

[2] Defendant briefly argues that Plaintiff cannot rely on Defendant's purported failure to approve the assignment of interests to a partner as a basis for the anticipatory repudiation claim because the ADA is clear that there can be no claims other than specific performance or declaratory judgment for failing to provide consent. However, Plaintiff has not brought a claim against Defendant for failing to approve the assignment of interests. Plaintiff has brought an anticipatory repudiation claim (based on numerous alleged acts committed by Defendant) against Defendant and the ADA does not limit Plaintiff's damages for such claims. At this stage of the proceedings, because there are plausible facts alleged to support an anticipatory repudiation by Defendant, the claim survives. *See* n. 3, *infra.*

[3] Defendant further argues that, as a basis for its anticipatory repudiation claim, Plaintiff cannot rely on its allegations that Defendant failed to comply with its advertising obligations under the ADA,

repudiation under Ohio law to survive this stage of the proceedings. With respect to Count One, the Court must deny Defendant's Motion to Dismiss.

> b. Count Two – THUSA's Breach of the ADA and the Implied Covenant of Good Faith and Fair Dealing

Under Ohio law, in order to establish a cause of action for breach of contract, Plaintiff must demonstrate: (1) existence of a contract; (2) performance by Plaintiff; (3) THUSA failed to fulfill its obligations; and (4) damages resulting from the failure. *V&M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (citing *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (applying Ohio law)). The parties disagree as to whether Plaintiff has sufficiently alleged element three.

Plaintiff alleges numerous grounds to support Defendant's breach of obligations under the ADA, which Defendant attempts to attack in turn. While Defendant again asserts a defense that any purported oral agreements modifying the parties' advertising obligations under the ADA must be disregarded, the issue of whether a no-oral-modification clause is waived is a question of fact not appropriate for determination at this stage of the proceedings. *See Kwikcolor*, 2011 WL 6775580, at *4. As such, at this stage in the proceedings, Plaintiff has alleged at least one breach by Defendant to support element three of Count Two.[4] Additionally, Defendant's reliance on *Davco Acquisition Holding, Inc. v. Wendy's Int'l, Inc.*, No. 2:07-CV-1064, 2008 WL 755283

---

which were allegedly modified by a later oral agreement, because the ADA contains a provision requiring any amendments to the ADA be in writing. Plaintiff responds that under Ohio law, there are important exceptions to the enforceability of no-oral-modifications and that Plaintiff can satisfy at least one of those exceptions (course of performance and waiver). Because the issue of whether a no-oral-modification clause is waived is a question of fact not appropriate for determination at this stage of the proceedings, *see Kwikcolor Sand v. Fairmount Minerals Ltd.*, No. 96717, 2011 WL 6775580 , at *4 (Ohio Ct. App. Dec. 22, 2011), the Court cannot dismiss Count One on this basis at this time. Defendant may, of course, renew any argument after the benefit of discovery.

[4] Defendant also contends that Plaintiff cannot rely on any refusal of the transfer of assignment in light of Section 19.06. However, because there is at least one alleged basis to support Count Two (breach of advertising obligations), at this stage of the proceedings, the claim is sufficiently pled.

- 4 -

(S.D. Ohio Mar. 19, 2008) is unavailing in light of the above. In *Davco*, under the franchise agreement, plaintiff agreed to sell only products that had been expressly approved for sale in writing by the franchisor. *Davco*, 2008 WL 755283 at *3. In determining whether or not to approve the sale of new products, the franchise agreement gave the franchisor the *right* to inspect the supplier's facilities. *Id.* at *4. Plaintiff alleged that the franchisor did not inspect the proposed supplier's facilities before denying its request to sell new products. *Id.* The *Davco* court found that although the franchise agreement states that the franchisor "shall have the right" to inspect the proposed supplier's facilities, this language simply granted the franchisor the right. "There is no express language in the agreement which imposes any duty on [the franchisor] to perform any of these acts each time a supplier is proposed by a franchisee." *Id.* at *5. Plaintiff argued that the franchisor had an obligation to inspect the premises under "the implied duty of good faith and fair dealing." The Court found that the duty of good faith and fair dealing may not be invoked to override express contract terms. *Id.* In other words, while the franchisor had a right to inspect the premises of any proposed supplier, it did not have a duty and the Court would not use "the implied duty of good faith and fair dealing" to impose said duty to inspect on the franchisor, thereby overriding the express contract terms. Here, Plaintiff has alleged express breaches of the ADA and is not attempting to impose a duty that is absent under the ADA (with respect to certain allegations). At this stage in the proceedings, *Davco* does not support dismissal. *See also Thomasville Furniture Indus., Inc. v. JGR, Inc.*, 3 Fed. Appx. 467, 472 (6th Cir. 2001) ("However Defendant's implied covenant of good faith and fair dealing claim as to the 1992 Agreement is not inconsistent with Ohio law. Defendant has argued that its implied covenant claim arises out of its written agreement with Plaintiff…Defendant need not rely on the implied covenant of good faith and fair dealing as an independent cause of action because

Defendant has argued that the implied covenant arises out of Plaintiff's written assurance on square footage requirements which formed part of their written contract.").

Drawing all inferences in favor of Plaintiff and treating Plaintiff's allegations as true as required at this stage in the proceedings, the Court finds that Plaintiff has sufficiently alleged a breach of contract (ADA) claim against Defendant. Accordingly, because Count Two states a claim for relief that is plausible on its face, the Court must deny Defendant's Motion to Dismiss. *See Ashcroft v. Iqbal,* 556 U.S. at 678.

### c. Count Three - THUSA's Breach of Plaintiff's Franchise Agreements and the Implied Covenant of Good Faith and Fair Dealing[5]

Under Florida law, in order to establish a cause of action for breach of contract, Plaintiff must establish (a) a valid contract; (2) a material breach; and (3) damages. *Beck v. Lazard Freres & Co., LLC,* 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So.2d 1338, 1340 (Fla. 1st DCA 1992)). The parties disagree as to whether Plaintiff's allegations satisfy element two.

Plaintiff alleges numerous breaches by Defendant, including that Defendant misappropriated its monies. Defendant argues that Plaintiff's misappropriation claims are conclusory. This Court disagrees. With respect to Plaintiff's misappropriation allegations, the Court finds that they are sufficiently pled and assumes the veracity of said allegations. As such, there is at least one basis to support Count Three. Drawing all inferences in favor of Plaintiff and treating Plaintiff's allegations as true as required at this stage in the proceedings, the Court finds that Plaintiff has sufficiently alleged a breach of contract (Franchise Agreement) against Defendant. Because Count Three states a claim to relief that is plausible on its face, Defendant's motion must be denied. *See Ashcroft v. Iqbal,* 556 U.S. at 678. However, Defendant may, of

---

[5] The Franchise Agreements are governed by Florida law. *See* [ECF No. 1 at ¶182 (Complaint) ("Florida law governs the Franchise Agreements between Show me Hospitality and THUSA.")].

course, renew its claim after the benefit of discovery. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ("The facts alleged in the complaint are plausible and raise a reasonable expectation that discovery could supply additional proof of Carnival's liability.").

### d. Count Four – THUSA's Tortious Interference with Plaintiff's Partnership

With respect to Count IV, Defendant argues it must be dismissed as a matter of law as an action for tortious inference "may only lie against an *outside* party," relying on *Pasqualetti v. Kia Motors America, Inc.*, 663 F.Supp.2d 586 (N.D. Ohio 2009). Defendant further contends that because any partnership between RSW Group and Plaintiff required Defendant's approval at its sole discretion under the ADA, Count IV must be dismissed as a matter of law because "the tort of willful interference with a business relationship does not exist where the defendant was the source of the business opportunity allegedly interfered with," again relying on *Pasqualetti*. After review, the Court finds that *Pasqualetti* is on point and comparable to the present action.

In response, Plaintiff relies on *one* case out of this District premised on Florida law when arguing that Defendant has overlooked an important exception to the general rule: Defendant can be liable for tortious interference with a contract in which it held approval rights or with a business relationship to which it was a party if the interference was done for an improper purpose or Defendant demonstrated bad-faith in its interference. However, as Defendant points out in its reply, Plaintiff relies on *one* case out of this District explicitly premised on Florida law, and nowhere in its response does Plaintiff argue the same exception is available under Ohio law, attempt to reconcile the case premised on Ohio law relied on by Defendant,[6] or address tortious

---

[6] The Court notes that under Ohio law, the third element a Plaintiff must establish when bringing a tortious interference with business relations claim is "the wrongdoer's *intentional* and *improper* action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship." *See Pasqualetti*, 663 F.Supp.2d at 602 (quoting *Bowshier v. Chrysler Financial Corp.*, 144 F.Supp.2d 919, 926 (S.D. Ohio 2001)).

interference of a business opportunity under Ohio law at all.[7] As Plaintiff has failed to address Defendant's argument under Ohio law, Count IV is DISMISSED WITH PREJDUICE.[8]

## IV.  Motion to Strike

Defendant, pursuant to Fed. R. Civ. P. 12(f), moves to strike Plaintiff's demand for a jury trial and request for consequential damages, indirect or special damages, lost profits or lost opportunity costs, arguing that the parties waived their right to a jury trial and the pursuit of the said damages when entering the ADA and Franchise Agreements.

### a.  Jury Demand

The Franchise Agreement contains a jury waiver trial waiver provision at Section 17.02, which states, in relevant part:

> Section 17.02 – Waiver of Jury Trial and Punitive Damages: **FRANCHSIOR AND FRANCHISEE IRREVOCABLY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM, WHETHER AT LAW OR IN EQUITY, BROUGHT BY EITHER OF THEM AGAINST THE OTHER, WHETHER OR NOT THERE ARE OTHER PARTIES IN SUCH ACTION OR PROCEEDING.**

[ECF No. 1-3 at §17.02] (emphasis in original). Despite the presence of the jury trial waiver in the Franchise Agreement, Plaintiff has demanded a jury trial on all claims. Plaintiff argues that because the waiver appears solely in the parties' Franchise Agreement and not the ADA, Plaintiff has only waived a jury trial on its claim that is based on a breach of the Franchise

---

[7] Defendant correctly notes that Plaintiff's pled Count IV under Missouri and Ohio law. [ECF No.1 at ¶195 (Complaint)].

[8] This Court has no duty to formulate arguments that Plaintiff might have made in response to Defendant's motion to dismiss, but did not. *See Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997) (explaining that "the onus is upon the parties to formulate arguments"); *see also Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it"). When an argument is raised upon a motion to dismiss that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned and subject to dismissal. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (finding that a party's failure to brief and argue an issue before the district court is grounds for declaring it abandoned).

Agreement (Count Three). However, aligning with Plaintiff would require this Court to ignore provisions of the ADA and the Franchise Agreement, provisions to which the parties freely contracted.[9]

First, the ADA itself defines Defendant as the "Franchisor." [ECF No. 1-1 at 3]. Second, the ADA consistently references the Franchise Agreement throughout, including in Section 2.01, which provides, in relevant part: "We [Defenant] grant you [Plaintiff], and you accept, the exclusive right and obligation to directly, or indirectly through one or more of Your Permitted Affiliates, establish, acquire and operate franchised Tim Hortons Restaurants in the Development Territory and pursuant to the Development Schedule *upon the terms and subject to the provisions of this Agreement and the terms of each Franchise Agreement entered into between you or Your Permitted Affiliate and us, together with all agreements related to the Franchise Agreements (which are referred to herein individually as a "Franchise Agreement" and collectively as "Franchise Agreements.")*" [ECF No. 1-1 at §2.01 ("Area Development Rights")] (emphasis added). Third, and most important, the ADA requires compliance with the Franchise Agreements entered into by the parties: "*You agree to abide by and faithfully adhere to the terms of each Franchise Agreement signed pursuant to this Agreement [ADA].*"[10] [ECF No. 1-1 at §10.02 ("**Compliance with Franchise Agreement** and Laws, Rules and Regulations")] (emphasis added). Likewise, the Franchise Agreement incorporates the ADA: "*This Agreement, the Attachments hereto, and the documents referred to herein, including the Area Development Agreement, constitute the entire and complete agreement between the*

---

[9] Because the ADA and Franchise agreements were attached as exhibits to Plaintiff's Complaint, it is proper for this Court to consider the agreements in ruling on Defendant's Motion to Dismiss. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to the complaint in ruling on a motion to dismiss").

[10] Section 1.01 of the Franchise Agreement provides: "This Agreement is being entered into pursuant to the Area Development Agreement entered into between Franchisor and Show Me Hospitality, LLC…" [ECF No. 1-2 at §1.01].

*parties concerning the subject matter hereof...*" [ECF No. 1-3 at §18.02 ("**Entire Agreement**")]. As such, there is no merit to Plaintiff's argument that the waiver applies only to claims brought under the ADA.

The Court must now determine if the jury waiver provision found in the ADA is valid. A party may validly waive its Seventh Amendment right to a jury trial so long as the waiver is knowing and voluntary. *Bakrac, Inc. v. Villager Franchise Sys. Inc.*, 164 Fed. Appx. 820, 822 (11th Cir. 2006). In making this assessment, courts consider the conspicuousness of the waiver provision, the parties' relative bargaining power, the sophistication of the party challenging the waiver, and whether the terms of the contract were negotiable. *Id.* at 824.

First, the Court determines that the jury trial waiver is conspicuous – the waiver provision is contained in its own separate paragraph; the waiver is in all capital letters and boldface type; and the waiver is written in straightforward and unambiguous language. Second, Plaintiff acknowledged that it read and understood the Franchise Agreement and that it had the right to consult with advisors of its own choosing about the potential benefits and risks of entering into the agreements. [ECF No. 1-3 at §19.00(c))]. Third, Plaintiff's principal is a sophisticated businessman with extensive experience as a senior executive and area developer. Moreover, the plain language of the waiver makes clear that it applies to *any* claim brought by *either* party against the other in *any* proceeding. [ECF No. 1-3 at §17.02]. As the waiver is valid and encompasses all claims arising under the ADA or Franchise Agreements brought by either party against the other, the Court grants the motion and strikes Plaintiffs' jury demand from all surviving claims. *See Bakrac*, at 822-24.

    b. Damages

Next, the Court turns to the issue of damages. The ADA contains the following

provision, limiting Plaintiff's recoverable damages:

> **19.06 Our Withholding Consent – Your Exclusive Remedy.** If you make any claim or assertion that we have unreasonably withheld or delayed any consent or approval to a proposed act by you under the terms of this Agreement, you agree that your sole remedy for the claim will be an action or proceeding to enforce the Agreement provisions, for specific performance or for declaratory judgment. ***Notwithstanding anything to the contrary in this Agreement you shall not be entitled to seek from us in any action or claim against us liquidated damages, consequential damages, indirect or special damages, lost profits or lost opportunity costs.***"

[ECF No. 1-1 at §19.06] (emphasis added)[11]. Plaintiff argues that Defendant overstates the applicability of Section 19.06 as the title makes clear that it relates solely to Defendant's non-approval and withholding of consent. Plaintiff's argument would again have this Court ignore contractual provisions to which it freely contracted. Section 19.09 of the ADA addresses the execution, construction, and interpretation of the ADA. Subsection (b) explicitly addresses the effect of the titles and subtitles used in the ADA: "***The titles and subtitles of the various articles and sections of this Agreement are inserted for convenience and will not affect the meaning or construction of any of the terms, provisions, covenants and conditions of this Agreement. The language of this Agreement will in all cases be construed simply according to its fair and plain meaning and not strictly for or against us or you.***" [ECF No. 1-1 at §19.09] (emphasis added). The plain language of Section 19.06 makes clear that Plaintiff may not seek from Defendant liquidated damages, consequential damages, indirect or special damages, lost profits or lost opportunity costs in *any* action or *any* claim. The title of the section does not alter the plain language found within that section. As such, Plaintiff is bound to the provisions for which it freely contracted.

---

[11] The Franchise Agreement also contains a provision limiting the damages sought – Section 18.09. However, it is not implicated here. Section 18.09 allows the Franchisor to seek certain damages in the case of Franchisee's breach. Here, the Franchisee is seeking damages for the Franchisor's breach. Section 18.07, at this stage in the proceedings, is likewise inapplicable. *See* n. 2 & 3, *infra*.

- 12 -

Accordingly, Defendant's motion to strike is granted on both fronts.

For the foregoing reasons, after careful consideration it is hereby:

**ORDERED and ADJUDGED** that

1. Defendant Tim Hortons USA Inc.'s Motion to Dismiss [ECF No. 15] is **GRANTED, in part, and DENIED, in part, as set forth herein**.

2. Count IV is **DISMISSED WITH PREJUDICE**.

3. Defendant Tim Hortons USA Inc.'s Motion to Strike [ECF No. 15] is **GRANTED.** Plaintiff's demand for jury trial is stricken from its Complaint. Plaintiff's claims for liquidated, consequential damages, indirect or special damages, lost profits and/or lost opportunity costs are stricken from its Complaint.

DONE AND ORDERED in Chambers at Miami, Florida, this 29th day of March, 2018.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Otazo-Reyes
All Counsel of Record