**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

CASE NO.: 17-22679-CIV-MARTINEZ/OTAZO-REYES

SHOW ME HOSPITALITY, LLC,

    Plaintiff,

v.

TIM HORTONS USA, INC.,

    Defendant.
_____/

TIM HORTONS USA INC.,

    Counter-Plaintiff,

v.

SHOW ME HOSPITALITY, LLC

    Counter-Defendant,

ERIC D. SIGURDSON,

    Third Party Defendant.
_____/

## TIM HORTONS USA, INC.'S MOTION TO STRIKE PLAINTIFF SHOW ME HOSPITALITY, LLC'S EXPERT DANIEL KORCZYK AND HIS EXPERT REPORT

Defendant, Tim Hortons USA Inc. ("THUSA"), files this Motion to Strike Plaintiff Show Me Hospitality, LLC's Expert Daniel Korczyk and his Expert Report, and as grounds therefor states.

**INTRODUCTION**

Plaintiff, Show Me Hospitality, LLC "(Show Me" or "Plaintiff"), served the first iteration of its expert report of Daniel Korczyk ("Korczyk") on March 26, 2018 (the "Initial Expert

Report").[1] The Expert Report was based on a lost profits analysis. Thereafter, on March 29, 2018, this Court issued its Order on Defendant's Motion to Dismiss and Motion to Strike striking from Show Me's complaint claims for liquidated damages, consequential damages, indirect or special damages, lost profits and/or lost opportunity costs. [DE 37 at 12]. As a result of this Court's Order on Defendant's Motion to Dismiss and Motion to Strike, on May 7, 2018, Show Me served its Supplemental Expert Report of Daniel Korczyk (the "Supplemental Expert Report").[2] Ignoring this Court's prior ruling, Plaintiff's Supplemental Expert Report continues to calculate damages which attempt to monetize Plaintiff's purported lost profits and Plaintiff's purported "lost opportunity." In fact, Plaintiff's expert conceded at deposition that his damage theory and calculations (which assume liability) are Plaintiff's "lost opportunity" to sell its business at the price he calculated, i.e. $11 million. (Korczyk depo. 84:4-15).[3] And, Plaintiff contends that it still seeks recovery under its expert's initial report which is plainly—and without disguise—a lost profits analysis. As a result, THUSA requests that this Court preclude Show Me from calling Daniel Korczyk as an expert witness and strike Plaintiff's Expert Reports.

## **MEMORANDUM OF LAW**

Show Me is a former area developer and franchisee of the Tim Hortons® System which claims that Defendant THUSA anticipatorily breached the parties' Area Development Agreement ("ADA") and Franchise Agreements at a June 28, 2016 meeting, and otherwise breached the parties' Franchise Agreements. Importantly for this motion, Show Me's damage claims fail, because—among other reasons—the damages sought are barred by the damages limitation clauses contained in the parties' ADA and Franchise Agreements. This Court already

---

[1] A copy of the March 26, 2018 Initial Expert Report is attached hereto as Exhibit "1".
[2] A copy of the May 7, 2018 Supplemental Expert Report is attached hereto as Exhibit "2".
[3] The deposition of Daniel Korczyk is being filed simultaneously with this motion.

determined that Show Me may not seek lost profits or lost opportunity damages or any consequential damages, indirect or special damages. [DE 37 at 10-12]. In its March 29, 2018 Order, the Court held that "[t]he plain language of Section 19.06 [of the ADA] makes clear that Plaintiff may not seek from Defendant liquidated damages, consequential damages, indirect or special damages, lost profits or lost opportunity costs in *any* action or *any* claim." [DE 37 at 11 (emphasis in original)]. And, this Court thus determined that Show Me is "bound to the provisions for which it freely contracted." [*Id.*]

The Court's ruling was based upon the provisions of both the ADA and the Franchise Agreements in which Show Me waived punitive and exemplary damages, and limited its recoveries to actual damages sustained. *See* ADA attached hereto as Ex. "3" at §19.06; Franchise Agreement attached hereto at Ex. "4" at § 17.02.[4] Specifically, section 19.06 of the ADA provides in pertinent part:

> Notwithstanding anything to the contrary in this Agreement you shall not be entitled to seek from us **in any action or claim against us liquidated damages, consequential damages, indirect or special damages, lost profits or lost opportunities costs.**

Ex. "3" at §19.06 (emphasis added). Likewise, section 17.02 of the Franchise Agreements provides in pertinent part:

> **FRANCHISOR AND FRANCHISEE HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM OF ANY PUNITIVE OR EXEMPLARY DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE BETWEEN THEM EACH SHALL BE LIMITED TO THE RECOVERY OF ANY ACTUAL DAMAGES SUSTAINED BY IT.**

Ex. "4" at § 17.02 (emphasis in original).

---

[4] THUSA has attached the Franchise Agreement for Tim Hortons® Restaurant #6612. All of the Franchise Agreements are substantially similar with regard to this Motion to Strike. If the Court requires, THUSA will submit all of the Franchise Agreements for the Court's review.

Nevertheless, in direct violation of this Court's Order, Show Me intends to present the expert testimony of Daniel Korczyk, whose damage calculations impermissibly continue to depend upon lost profits or lost opportunity costs in both the Initial Expert Report and the Supplemental Report. *See* Ex. 1, Ex. 2; *see also* Korczyk dep. at 84:4-15.

In Korczyk's Initial Expert Report, Korczyk calculates damages based upon two lost profits models: a 20 year model seeking damages of $16.6 million and a 15 year model seeking damages of $21.56 million. *See* Korczyk's Initial Expert Report, Ex. 1 at Exhibits 6.2 and 7.2. The models in Korczyk's Initial Expert Report are clearly lost profits analyses. As THUSA's expert Barry Mukamal states in his report:

> Both the 20 year damages model and the 15 year damages model calculate profits allegedly lost by SMH as projected in the SMH Model. Accordingly, Korczyk's damage claims in Korczyk-LP [the original Expert Report] are barred pursuant to provisions of the ADA and the March 2018 Court Order.

Mukamal report, Ex. 5 attached hereto, at p. 48, § 122.[5]

Korczyk himself recognizes that his Initial Expert Report is barred by the Court's determination that lost profits and lost opportunities damages are not recoverable. Korczyk Supplemental Expert Report, Ex. 2 at p. 1, ¶ 3. As a result, Korczyk drafted and delivered a May 7, 2018 Supplemental Expert Report. *See* Ex. 2. Korczyk explains in his Supplemental Expert Report that it was prepared as a result of the Court's ruling:

> I have been requested to supplement my earlier expert report dated March 26, 2018 (referred to in this supplemental report as "Korczyk1"), with an alternative measurement of damages... This request for an alternative damages computation is based on the court's ruling that it will enforce the damages limitations clause in an Area Development Agreement between Tim Hortons USA Inc. and Show Me Hospitality, LLC wherein such agreement precludes liquidated, consequential, indirect or special damages, lost profits and/or opportunity costs.

---

[5] A copy of the Expert Rebuttal Report of: Supplemental Report of Daniel Korczyk, Prepared By: Barry Mukamal, CPA/PFS/ABV/CFE/CFF/CIRA, dated September 21, 2018 (the "Mukamal Report" is attached hereto as Exhibit "5".

Korczyk Supplemental Expert Report, Ex. 2 at p. 1, ¶ 3.

However, Korczyk's Supplemental Expert Report is likewise barred. In the Supplemental Expert Report, Korczyk calculates a new set of numbers with a different damage date than his earlier report, this time asserting Show Me's damages (assuming liability) are $11.137 million. Yet, despite the damage limitation clause precluding "lost opportunity" damages, Korczyk's calculations are just that: an attempt to monetize a hypothetical lost opportunity for Show Me to sell its business in 2016. Korczyk acknowledged this fact at his deposition:

> Q.  Okay.  Now, again, our starting point was that this $11 million valuation that you did [in the Supplemental Report] represents what a buyer would pay to a seller as a fair market value as of April 2015, right?
>
> A.  In Korczyk-2 [Supplemental Report], right?
>
> Q.   In Korczyk-2 [Supplemental Report].
>
> A.   Right.
>
> Q.  And so the damage is that some misconduct by Tim Hortons caused Mr. Sigurdson **to lose the opportunity to sell a business at that price as of 2015**?
>
> A.   Right.

Korczyk dep. at 84:4-15 (emphasis added).  As this Court already has determined, lost opportunity damages are barred by the damage waiver clause. [DE 37 at 10-12].

Korczyk's Supplemental Expert Report is alternatively barred because, like the Initial Expert Report, its $11 million value calculates and depends upon the existence of lost profits and attempts to monetize a value based upon the same. Korczyk utilized in his Supplemental Expert Report an "income approach" to arrive at the $11 million figure. Korczyk Supplemental Expert Report, Ex. 2 at p. 7, ¶ 23.[6] His Supplemental Expert Report acknowledges that the income

---

[6] Korczyk states, "[i]n performing analysis related to SMH, I utilized the income approach as a

5

approach establishes value based upon projected profits:

> *The Income Approach*
>
> The application of the income approach establishes value by means that capitalize or discount future anticipated benefits, such as cash flows or earnings, by a discount or capitalization rate. Capitalization and discount rates are applied to reflect market rate of return expectations, as well as the relative risk of the investment. **This approach is often used to determine the value of operating companies whose value is aligned with their ability to generate future profits like SMH**

*Id.* at p. 6, ¶ 22 (emphasis added). Korczyk's reliance on lost profit projections is fundamental to this calculation. He acknowledged at deposition that the damage amount would be "negligible" in the absence of his profit assumptions. Korczyk dep. at 69:9-71:3.

THUSA's rebuttal expert, Barry Mukamal, likewise recognizes that projected lost profits are the fundamental component to the $11 million valuation in Korczyk's Supplemental Expert Report and that the damage amount would be negligible without reliance on lost profits projections:

> Both the DCF Value (an income approach) and the Investor Value calculated by Korczyk [in the Supplemental Report] have a clear fundamental basis in future profits of SMH, and it is the loss of these profits that Korczyk claims as SMH's damages. Korczyk himself acknowledges that he "utilized the income approach as a primary means for assessing damages and equity value" and further defines the income approach as an approach "which establishes value by means that capitalize or discount future anticipated benefits, such as cash flows or earnings, by a discount or capitalization rate." If lost profits and/or lost opportunity are to be excluded from this analysis pursuant to the March 2018 Court Order, both the DCF Value and the Investor Value would yield nil to relatively negligible value at the Alleged Damage Date [in the Supplemental Report].

Mukamal Rebuttal Report, Ex. 5 at pp. 9-10, ¶ 23.

This Court's Order determined that lost opportunity damages and lost profits are waived.

---

primary means for assessing damages and equity value, and relied upon the market approach as a secondary means of arriving at my conclusions." Korczyk Supplemental Expert Report, Ex. 2 at p. 10, ¶ 23.

[DE 37 at 10-12]. Indeed, as this Court is well aware, under Ohio and Florida law, a contract remedy is exclusive if the parties so stipulate. *See Bank One, N.A. v. Echo Acceptance Corp.*, 380 F. App'x 513, 522 (6th Cir.2010); *Mead Corp. v. ABB Power Generation, Inc.,* 319 F.3d 790, 796 (6th Cir.2003) (it is a basic principle of contract law that parties by an express agreement may contract for an exclusive remedy if the parties clearly indicate their intent to make the remedy exclusive); *Sheet Metal Workers' Nat. Pension Fund Bd. of Trustees v. Courtad, Inc.*, No. 5:12-CV-2738, 2015 WL 5560014, at *6 (N.D. Ohio Sept. 21, 2015) (same); s*ee also Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*, 193 F. Supp. 3d 1294, 1309 (S.D. Fla. 2016) (court enforced agreements' contractually agreed-upon limitation provision barring claims for incidental and consequential damages).

As set forth above, Korczyk's Initial Expert Report is plainly a measure of Show Me's purported lost profits and is not allowed under this Court's prior Order and the parties' agreements. Korczyk's Supplemental Expert Report is equally improper as it is based on a discounted cash flow ("DCF") analysis, which is another consequential damages analysis. Plainly, Show Me seeks more than actual damages from THUSA. As this Court has already found that Show Me may not seek from THUSA liquidated damages, consequential damages, indirect or special damages, lost profits or lost opportunity costs in *any* action or *any* claim, this Court must strike Show Me's Expert Daniel Korczyk and his expert reports as they are not allowed under the parties' agreements or this Court's Order.

## **CONCLUSION**

Based on the foregoing, this Court must strike Show Me's expert Daniel Korczyk and his expert reports.

CASE NO.: 17-22679-CIV-MARTINEZ/OTAZO-REYES

WHEREFORE, Defendant Tim Hortons USA Inc. requests that this Court enter an order striking Plaintiff's expert Daniel Korczyk, striking his expert report and supplemental expert report, and precluding him from testifying as an expert witness, and granting such other relief as this Court deems just and proper.

s/Nina Greene
Michael D. Joblove
Florida Bar No.: 354147
mjoblove@gjb-law.com
Nina Greene, Esq.
Florida Bar No. 072079
ngreene@gjb-law.com
GENOVESE JOBLOVE & BATTISTA, P.A.
100 Southeast Second Street, 44th Floor
Miami, Florida 33131
Telephone: (305) 349-2300
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF this 29th day of October, 2018.

**s./ Nina Greene**

Attorney

CASE NO.: 17-22679-CIV-MARTINEZ/OTAZO-REYES

## **SERVICE LIST**

*Show Me Hospitality, LLC v. Tim Hortons USA, Inc.*
**CASE NO.: 17-22679-CIV-MARTINEZ/OTAZO-REYES**

**(1)** Michael D. Joblove
mjoblove@gjb-law.com
Nina Greene
ngreene@gjb-law.com
Martin J. Keane
mkeane@gjb-law.com
GENOVESE JOBLOVE & BATTISTA, P.A.
4400 Miami Tower
100 Southeast Second Street
Miami, Florida  33131
Telephone:    (305) 349-2300
Facsimile:    (305) 349-2310
*Attorneys for Defendant Tim Hortons USA, Inc.*

**(2)** Robert Zarco
rzarco@zarcolaw.com
Robert M. Einhorn
reinhorn@zarcolaw.com
Alaina B. Siminovsky
asiminovsky@zarcolaw.com
ZARCO EINHORN SALKOWSKI & BRITO, P.A.
2700 Miami Tower
100 Southeast Second Street
Miami, Florida  33131
Telephone:    (305) 374-5418
Facsimile:    (305) 374-5428
*Attorneys for Plaintiff Show Me Hospitality, LLC*
**SERVED VIA CM/ECF**

**(3)** Scott E. Korzenowski - *Pro Hac Vice*
sekorzenowski@dadygarner.com
Andrew M. Malzahn - *Pro Hac Vice*
amalzahn@dadygarner.com
DADY & GARDNER, P.A.
5100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
*Attorneys for Plaintiff Show Me Hospitality, LLC*
**SERVED VIA CM/ECF**